We will start this morning with our first case, Taveras v. Attorney General. Good morning. If I could, I'd like to reserve three minutes for roboto. That's granted. If it pleases the Court, my name is Sandra Green. I am counsel for the petitioner, Orlando Fernandez Taveras. Mr. Fernandez is a native and citizen of the Dominican Republic who seeks to retain his status as a lawful permanent resident. Mr. Fernandez challenges the adverse determination of the Board of Immigration Appeals that he was ineligible to receive a 212H waiver on the basis of a drug possession conviction that was not charged as grounds of removal in his second notice to appear. Now, there's a Fifth Circuit opinion that I'm sure Judge Rosenthal is aware of. De Hoyos? Yes. The immigration judge wasn't really persuaded by that, but I find that pretty persuasive as to the fact that his prior conviction was not waived in the prior cancellation of removal proceeding. How can you distinguish or tell us that De Hoyos is not persuasive? Well, I would just point out initially that it's hard to imagine that that decision could stand as support for the Board's decision to matter to Fernandez because the Board doesn't reference it at all. So I would just start out with that position. What about its reasoning? Well, we would argue that the reasoning is flawed, and the reason for that is that the Fifth Circuit failed to take into account that with respect to the second effort to remove the alien on the basis of the offense, it was not charged as a, the government did not bear a burden with respect to that offense in the second go-around. So in other words, if I'm understanding the case correctly, the Fifth Circuit, the Fifth Circuit did not ask, did not look to the fact that the agency did not meet its burden of proof with respect to that offense in the second go-around  Let's back up. The cancellation of removal that was previously granted, you're arguing that there was somehow a waiver of the conviction that was the basis for those removal proceedings. Where is there in any procedure that occurred any indication that a conviction has been waived or somehow undone? I just can't find it in either the reasoning or the logic of that procedure. I apologize. It's not so much that the conviction vanishes or that the conviction is viewed as being vacated. What happens is that once the applicant applies for relief in the application and it's granted, then it can no longer be used as a basis of removal for those same circumstances. What says that? Where is the authority for that proposition? It's still an existing conviction, and later on when you look to see what convictions there are, you're saying somehow you don't count that. I'm just looking for authority on that point. Well, we would say that the authority on that point is Madara-Balderas, as a ground of inadmissibility. Its prior precedent in Madara-Balderas required that the agency meet a burden of proof in the subsequent proceedings that that original offense continued to serve as a basis of removal. In this proceeding involving this alien, the agency had no burden of proof with respect to the drug conviction. I'm thinking that those arguments point in the other direction, but maybe that's just my miscue as to Balderas and what the agency held there. Now, the immigration judge was convinced that Section 101 provided the path to your client's winning before the immigration judge. But isn't it pretty clear under the Supreme Court's recent case of Vartelis that the board correctly viewed 101 as applying only when there's really a re-entry into the country? How can we read 101 as applying in this situation after Vartelis? Well, because the board, and even in the matter of Fernandez's decision, the board has always viewed a request for adjustment of status as an admission. So even though the alien has not left the United States technically for purposes of his proceedings or his immigration status, he's deemed to have made an entry to the United States when he seeks an adjustment of status. It's one thing to say adjustment of status is tantamount to an admission. It's another thing to say that in order to adjust status, you have to show your admissibility. And that does not include, and Section 101 really doesn't come into play in determining admissibility, does it? Well, we believe that it does because what the statute states is that where an alien could be deemed inadmissible but receives cancellation or removal or some other form of relief, that would not preclude the alien's ability to enter the United States. The alien in that circumstance would not have to prove admissibility for future entries. How do you respond to the government's arguments that the history and the language and the application of that section shows that it was intended to respond to the narrow circumstance of a legal permanent resident who has previously attained a waiver of cancellation who then leaves the country physically and comes back and should not be put to the burden of having to reestablish eligibility at that point? Well, I think the board precedent has been that there should be no distinction between a person. It's an unreasonable or arbitrary distinction to make between someone who departs the United States as opposed to someone who remains in the United States when they're attempting to obtain the same immigration benefit. So we would argue that it's not necessary that Mr. Fernandez depart the United States in order for him to receive the benefit under 101A.13. Do you have any authority that supports that? I believe it was a – I can try to address it on rebuttal, but I believe there was a Supreme Court decision actually that – Well, but not in the same context. It was a different context, but the underlying theory remained the same. If I could ask you a question about the distinction you draw in your brief between the argument that there was no relationship between the drug offense that was waived as the basis for – and the crimes of moral turpitude that were the triggering factor for the second removal proceeding, you seem to argue that if there had been another drug offense, it would have been permissible to use the waived offense as a factor in removability. Totally different offense, but of the same category or type. Where is that – I'm struggling to find the exact – the textual or statutory basis for that argument. Well, again, I would point the panel to the matter of Balderas. Again, the alien in Balderas had been initially deemed subject to removal on the basis of a crime of moral turpitude, was granted a waiver, then subsequently committed additional crimes of moral turpitude. The agency was able to reach back and grab the prior crime of moral turpitude, combine it with the subsequent crime of moral turpitude, find two grounds of moral turpitude as the basis for removal in the subsequent proceedings. So you're viewing that fact pattern as critical to the Balderas holding. Absolutely. De Hoy has, of course, found Balderas consistent with its outcome. So apparently it did not view the relationship of the earlier and the later criminal convictions as essential to the holding of Balderas. Again, I think the flaw in the Fifth Circuit's analysis is that it did not hold the agency to an obligation to meet a burden of proof with respect to the original offense when combined with the subsequent offense. I believe that's the flaw in the Board's analysis and the Respondent's position in these proceedings that the agency, with respect to Mr. Fernandez, never established that he was removable in the subsequent removal proceedings on the basis of the drug offense. It's clear the two petty larceny offenses subjected him to inadmissibility. He had to apply for a 212H waiver, which the immigration judge did grant. But with respect to the drug offense, he had already been granted a waiver of inadmissibility for that. So unless the agency met a burden of proof with respect to that drug offense as being the basis for Fernandez's removal in the subsequent proceedings, it did not stand as an inadmissibility barrier to Mr. Fernandez. It's important to note that the reason why the alien has a burden to prove inadmissibility is precisely because the government has proven that the alien is subject to removability. In this case, there was no proof on the part of the agency with respect to the drug offense that in the second proceedings he was removable. That's because it had already been addressed in the initial removal proceedings. Let me ask you about Duhaney. Doesn't Duhaney undermine your position? No. Our position is that Duhaney really has no direct applicability toward this case. So in the language from Duhaney, which I'm going to just read some to you, the fact that a petitioner's deportation based on a particular conviction has been waived does not prevent subsequent consideration of the same underlying conviction for other purposes. That doesn't undermine your position? No, we don't believe that it does, and that's because in Duhaney you were dealing with a situation  He had been processed initially under a law that did not require that he be... The law regarding drug trafficking offenses, I believe, was changed after he was granted 212C relief. And also the law relating to the firearms offenses and the manslaughter offense. It became a crime of violence in subsequent years. So the immigration laws permitted retroactive impact on prior offenses as well. So it's an entirely different situation. There's no intervening change in law in Fernandez's case. So we don't believe that it's relevant. Also, with respect to Duhaney, it's also important to note that the waived offense was eventually vacated. The criminal court vacated that offense, so there was no waiver issue in Duhaney as it went further in the removal proceedings. But obviously the statement there says the conviction can be used for other purposes. It would seem that that would undermine the notion that it can be used for this purpose and this one and not again. Well, it can be used for further purposes, but again, if you look to Balderas, the agency has a burden of proof. Every time the agency chooses to use a conviction that has been waived in the past, the agency has to meet a burden of proof with respect to that offense in the subsequent proceedings. The charge has to be lodged, and there has to be a determination of removability. I would also point the court to the position of the government in Duhaney in which the agency asserted that the transaction involved in Duhaney required proof of a lodged charge as well as objective facts of a conviction, and we don't have that in the Fernandez situation. If you could on rebuttal provide me the language in Balderas that you find helpful, I would appreciate that. Sure. Thank you. All right, we'll hear from you on rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Sana Lee representing the Attorney General. Your Honors, at heart, I think, based on your questionings, sorry, your questions, that you would seem to agree that this case is really about whether a conviction can be waived by, I'm sorry, whether a prior conviction can be waived by a grant of cancellation of removal. Well, we've used, I mean, the petitioner uses the language waiver. I'm not really sure if it's waiver. It's just, you know, having been used once as a basis and then the petitioner having gotten relief, can it be used again in a subsequent proceeding? I mean, kind of when does it end in terms of relying upon a conviction at this time? Right, Your Honor. I think it is indefinite for the specific ground that the alien was first charged with. So if he'd done nothing else, he would have been fined? Right, Your Honor. But in this case, Mr. Tavares was, as you know, charged again with removability and completely different grounds. So in this case, the Department of Homeland Security wanted to use the 1999 prior conviction as a ground of admissibility with regard to the petitioner's application for adjustment of status. And in contradiction to what opposing counsel is saying, the petitioner in this case had the burden of proof to establish that he was eligible for adjustment of status. If 101 applies, that is if we buy the argument that the physical act of physically crossing the border is not necessary, and 101 applies, does that change the burden of proof? No, Your Honor. 101 does not change the burden of proof with respect to adjustment of status. There are two completely different provisions addressing two completely different circumstances. Who has the burden of proof when the alien is coming back across the border? Legal permanent residence has been previously granted cancellation of removal. Right, so with those aliens, legal permanent residence, the Department of Homeland Security has the burden of proof to establish that one of these factors under 101 applies to that alien. And if so, then that alien would be considered an applicant for admission. So the purpose of 101 is to allow lawful permanent residence to kind of come and go without having to prove that they are admissible. You take the position that 101 is ambiguous. Are you disagreeing with the board? The Board of Immigration Appeals uses the word clear with respect to the meaning of 101 as applying to reentry, but you suggest there is ambiguity. What is the ambiguity? The ambiguity is regarding the definition of admission. Yeah, you've had some precedent in the immigration courts that kind of equated adjustment of status and admission along the way. So you're kind of covering that base, if you will. Right, Your Honor, and I think in the Third Circuit there have been cases where... Where we have muddied the waters, you think? Right, so I think the case law in this circuit would support the government's position in this case that an admission here is... I'm sorry, it is ambiguous because 101 applies to aliens who are returning to the United States. Seeking admission. Right, Your Honor. The use of the word admission and admissibility and adjustment of status, trying to explain the different permutations is difficult at best. Right. How do you read Balderas? Balderas supports... Although it was under the prior version. Right, that was regarding 212C. But the principle still supports the board's decision in this case where Balderas said that the waiver in that case did not waive the conviction, but rather waived the finding of deportability or excludability. And that same principle applies to this case. And also, furthermore, as Judge Greenway pointed out, Duhaney undermines the petitioner's position in this case that Balderas helps him, whereas the government would argue that Balderas supports the board's position. And it doesn't matter that there is not another crime involving moral turpitude or a second ground of removability that's similar to the ground in the first proceeding. That's irrelevant as far as whether the grant of cancellation in this case removes or expunges the conviction, the 1999 conviction in this case. In the Hanif case, again, Judge Greenway, you seem to be prolific in this area. I'm edited. I think there we rejected the idea that the term admitted was ambiguous. And we found it was clear and unambiguous in light of the definition of admission under 1101. But I guess that's a little bit different. Right, that was regarding the language of 212H. Yeah. So, yes, our position is that 101, with regard to this specific situation, is ambiguous, but that the board's decision deserves a chevron deference because it was reasonable. And as Judge Rendell stated, it was supported by legislative history, as well as just looking at the different purposes of 101 versus 245A regarding adjustment of status. The language, the burden of proof, the legislative history, all supports our view that 101 does not help Mr. Tavares in his case. Simply because it doesn't apply to adjustment of status applications and removal proceedings? Right, Your Honor. It has nothing to do with adjustment of status at all. They're just two completely different provisions. Was Mr. Fernandez-Tavares, was he a lawful permanent resident? Yes. Even though he had admitted grounds for removability previously? It doesn't affect it. Well, once he conceded that he was removable in the recent proceedings, then he essentially lost that status. Yeah, because 101A13C5 is only available to lawful permanent residents. So I don't know if he loses his status. That's true. Yes, that's true, Your Honor. If he did lose that status, then would you be more comfortable in saying that it is unambiguous as to that the language of 101 unambiguously excludes him from what it covers? Yes, right. If you say that he has lost his status. Yes, that's true, Your Honor. And furthermore. Is there anything about De Hoyos that gives you heartburn on behalf of the government? Excuse me? If the Supreme Court were to say De Hoyos is just horrific, would the government find anything about that distressing? Is that terrific or horrific? Well, it would be distressing because the – well, with regard to this case, it's very similar to the facts in this case. Right. I guess what I'm asking is whether the government is wholly pleased with the reasoning in De Hoyos and adopts it as the position it would like to be made the national view. Yes, Your Honor. It's almost, I think, the identical facts to this case. And in that case, the Fifth Circuit said that the cancellation of removal provision of the INA is clear that it does not cancel or somehow waive a prior conviction. And we would agree with that. And even if it wasn't clear, then we would argue that matter of baldera supports the Court's position and also the reasoning in De Hoyos. If the Court does not have any more questions. Actually, I had one question for you. So in this instance, therefore, a petitioner would have no recourse with that conviction being used ad infinitum. I'm sorry, what was the last part of your question? So, ad infinitum. I mean, there'd be no recourse to essentially prevent, forestall, impede the use of that conviction forever. With regard to a ground of removability that was brought against the petitioner, an alien in removal proceedings, it would last forever. Like, for instance, you get a cancellation of removal, you're clean, everything's good. The government comes back ten years later. And they say, oh, yeah, let's look 11 years back, there's that conviction, let's use that. And they try to use it, they're foiled, it doesn't work out. Another ten years go by, person's clean again. What I'm asking is, is there any point in time where a petitioner can say, I'm okay now, I know this conviction can't be used. I think the petitioner can rest assured that it wouldn't be used in the same way. It can't be used as a basis for other deportability proceedings. But if you're counting how many convictions someone has, they still have the conviction because the conviction still exists. Right, the conviction would be there for other purposes. You can use it as a factor. Right, a factor. But there's nothing like the federal rules of evidence that say after ten years, for certain purposes you can't look back to this particular conviction. Right, as far as the INA, I don't think there's a specific, there's no specific language as far as I know that says that. You mean there's no specific language that would preclude it? Right, as far as I know. But the conviction could be used for other purposes, or maybe in conjunction with a different conviction, or like in Duhaney when the law changed, there was a different law in place by Congress, but the petitioner in that case was not charged. It's removable under that ground. I do have one other question. When the Fifth Circuit says you can use this conviction, which was once the basis of the waiver, as a factor, as I recall the circuit facts, that was just that, a factor. But here, if you allow it to be considered because it's a drug conviction, it automatically makes him ineligible, correct? Right, he's ineligible because there's no waiver for a drug conviction. Exactly. Under 212H. Considering it a factor here means game's over. And it almost is the basis for the deportability. That's right. Does that give an argument against adopting that as the inflexible approach? It seems flexible, but here it has the opposite result. If the petty theft had been the prior one, the current, that would be interesting. Which I think was what happened in Duhoit. The other way around, yeah. Okay, right, so it was a little bit different. Yeah, how do you respond to that? Well, just that that would, I mean, you are correct in that. Is that just the way Congress set it up? It seems that way, Your Honor. There's no way that he could be admissible because there's no waiver for him for that drug charge. That's interesting. It, in effect, becomes the basis for deportability. Well, I would not say deportability. No, because everything has to be moral. Because the moral drug or two offenses, too. Right. You add that in. He just can't get relief for his, he admitted that he's removable. So he just can't get the relief that he wants. Okay. Thank you. Thank you very much. All right, thank you. Ms. Green, we'll hear from you on the bottom. With respect to Judge Mandel's question regarding matter of Balderas, I would direct the panel to page two, I'm sorry, page three of Balderas at the bottom where the court says, a criminal conviction could indeed be the basis of a deportation charge. Which paragraph are you? The paragraph begins. It says id in my copy. Indict him? Yes. And then the last sentence says, a criminal conviction could indeed be, and then goes to the next page, the basis for a deportation charge and two separate orders to show cause. And then additionally, and again, the operative language would be deportation charge. And the last, next to the last paragraph on the final page of the decision, it begins with the word accordingly, the end of the second sentence. Therefore, we hold that a conviction which has once been relied upon in a charge of deportability may be alleged as one of the two crimes involving moral turpitude in the second proceeding, even though the first proceeding was terminated by a grant of relief under section 212C of the act, where the second crime alleged is a subsequent conviction for, or a conviction that was not disclosed in the prior proceeding. Why is that not this precise situation? It's not this precise situation because the drug offense was not alleged as a ground of removability in the second NTA. No, no, no. But the second crime alleged is a subsequent conviction or a conviction was not disclosed, which would be the petty theft. Which would be the petty theft. So he is indeed properly deemed as inadmissible with respect to the petty thefts, but with respect to the drug offense, that was not charged as a ground of removal in the second proceedings. Well, but we hold that a conviction which has once been relied upon in the charge of deportability. Which would be the drug offense. The drug offense may be alleged as one of the two crimes of moral, i.e. it still is there and able to be alleged and used in the second proceeding. Right, but the government has a burden of proof. Once it's alleged in the second proceeding, the government has to meet a burden of proof that the alien is removable for that offense. In this case, the government is attempting to use a drug conviction for which it has no burden of proof in the second proceedings because it's not alleged in the NTA. Why would it make a difference, which I gather is your argument, if all of the removability proceedings, first and second, involve drug offenses or involve like offenses? Right. Well, there has to be a link. So in other words, the government could have charged him with a drug offense in the second proceedings if he had committed a drug offense. Or for example, drug trafficking offenses are considered crimes of moral turpitude. So if his offense was not a possession offense, if it was an actual possession with intent offense, it could be classified as a crime of moral turpitude in the subsequent proceedings. There would be a link and the government would have an obligation to prove removability for both of those crimes of moral turpitude in the second proceeding. In that case, then he has no argument. He would be subject to removal. All right. Thank you. Thank you very much. All right. Thank you. Case was well argued. We'll take it under advisement.